[No. 16887.   Department Two.   March 15, 1922.]

THE STATE OF WASHINGTON, *Respondent,* v.
FRED GOODWIN *(Alias John Fred Welch),*
*Appellant.*[1]

CRIMINAL LAW (104)—EVIDENCE—RES GESTAE—STATEMENTS OF PERSON INJURED.   Upon a prosecution for murder by blowing up a dredge, statements of an injured workman made within 10 or 15 minutes after the explosion, when rescued from the water, are admissible as part of the *res gestae,* where they were spontaneously made and presumptively impulsive and without design or premeditation.

SAME (104).   In such a case, statements made while the injured man was being rowed across the river, and which were mere repetitions of his first statements, are admissible as part of the *res gestae.*

SAME (131-1)—EVIDENCE—ADMISSIONS OF ACCUSED—ACQUIESCENCE OR SILENCE.   In a prosecution for murder by blowing up a dredge, statements of deceased shortly after the explosion charging defendant with the crime, made in defendant's presence, and not replied to when the circumstances naturally called for a reply, are admissible.

[1]Reported in 204 Pac. 769.

Appeal from a judgment of the superior court for Pacific county, Hewen, J., entered March 29, 1921, upon a trial and conviction of murder. Affirmed.

*W. H. Abel* and *D. G. Abel*, for appellant.

*Herman Murray*, for respondent.

MACKINTOSH, J.—At nine o'clock on the night of December 16, 1920, there were five employees on a dredge anchored in a river in Pacific county. An explosion occurred on the dredge in which three were instantly killed, the fourth died before midnight, and the fifth, the sole survivor, is the defendant in this case, charged with having murdered his companions. He was convicted and this is his appeal.

The noise of the explosion and the light from the fire which followed it attracted the attention of the few persons residing in the vicinity, who, by foot paths and in rowboats, hurried to the scene. The outcries of Eigel Christianson, who was struggling in the water, brought assistance to him. He was taken out of the water at a point about three hundred feet from the dredge, in a terribly mutilated condition, and placed in a rowboat. His rescue occurred some ten or fifteen minutes after the explosion. As he was being pulled into the boat, witnesses testified that he said, "That crazy son of a bitch," and continued to repeat that remark. He was rowed from the point where he was picked up to near the dredge, where the defendant was standing. He there said, "He even clubbed me after I got into the water." An attempt was made to carry him to the shore near the dredge, but his pain was so intense he was allowed to remain in the boat, and was rowed to the opposite side of the river, a distance of some two hundred feet. While on his way across the river, witnesses testified that he inquired where

they were taking him and why. From there he was taken up the river some three hundred yards to a fisherman's shack, and on the way up he repeated the expression, "He even clubbed me after I was in the water."

At the shack he was placed on a cot and first aid given him. The defendant was brought to the same shack a few minutes later (all this occurring within half an hour after the explosion), and was placed on a cot in the same room and on the opposite side of a stove. "Their heads were laying towards the stove; I think perhaps they were lying two feet from the stove, each one of them. They could see each other." While lying in this position, witnesses testified that Christianson said, "He did it." "Mr. Behnke, Mr. Jarvi and I were playing cards, he came in with three sticks of dynamite and then jumped overboard." "When I was trying to get up the bank he struck me three times over the head with a club." "He did it." "That man hit me three times over the head with a stick." He inquired who was lying on the other cot, and when they told him, he said, "Come over here, Pete," and pointing to Welch said, "There is the man that done it."

It is claimed by the appellant that all of these statements were improperly admitted, not being part of the *res gestae*.

It will be noticed that this testimony may be divided into three groups: first, those statements which were testified as having been made by Christianson before he was taken to and at the dredge; second, those made while being rowed up the river; and third, those made while in the fisherman's shack.

The rule as to the admissibility of statements as part of the *res gestae* has been greatly relaxed since

the early days of the common law, and it is no longer necessary, in order to render these statements admissible, that they be made contemporaneously with the incident to which they relate. Modern authorities recognize this relaxation, and it may be said safely that the rule now is as stated in the recent case of *Solice v. State*, 21 Ariz. 592, 193 Pac. 19, where the supreme court of Arizona used the following language:

"Were the statements a part of the *res gestae*? We have examined a large number of authorities upon the abstract propositions involved in the rules on which testimony is received or not received as part of the *res gestae*. These authorities satisfy us that the close connection in time between the statements or declaration and the act of which it is said to be a part is an element for consideration; that being close in point of time is not, however, all of the basis for receiving such evidence, and that the ultimate test is spontaneity or instinctiveness and logical relation to the main event; that the tendency of the modern cases is to be liberal in the reception of such testimony.

"Mr. Wigmore, under the convenient term of 'Spontaneous Exclamations', discussing the exceptions to the general rule excluding hearsay evidence, in his work on Evidence, at Section 1750, volume 3, page 2256, says:

" 'It is to be observed that the statements need not be strictly contemporaneous with the exciting cause; they may be subsequent to it, provided there has not been time for the exciting influence to lose its sway, and to be dissipated. The fallacy formerly entertained by a few courts, that the utterance must be strictly contemporaneous (post, § 1756), owes its origin to a mistaken application of the verbal act doctrine. . . . Furthermore, there can be no definite and fixed limit of time. Each case must depend upon its own circumstances. . . . Since the application of the principle thus depends entirely on the circumstances of each case, it is therefore impossible to regard rulings upon this limitation as having in strictness the force of

precedents. To argue from one case to another on this question of 'time to devise or contrive' is to trifle with principle, and to cumber the records with unnecessary and unprofitable quibbles.' "

It is plain that the statements made by Christianson within the short time which elapsed between the explosion and the time he was taken across the river, in view of the testimony as to the considerable injuries which he had suffered, were statements which were spontaneously and instinctively made and raise a reasonable presumption that they were impulsive utterances of thoughts arising from the circumstances, and made so soon thereafter as to negative any presumption that they were made with design and premeditation. This court has recognized the admissibility of such statements in the recent case of *Heg v. Mullen*, 115 Wash. 252, 197 Pac. 51.

The statements made by Christianson while being rowed to the fisherman's shack would seem, also, to be admissible as part of the *res gestae*, under the rule which has been stated above, it being clear that they were made while under the shock and excitement of the explosion, and we see no reason for refusing their admission in the fact which appellant relies on that Christianson, when being rowed across the river, inquired as to his whereabouts and the reason for his being moved. A man does not have to be irrational and oblivious of his surroundings in order to allow in evidence his statements as part of the *res gestae*. Furthermore, the statements that were made by Christianson on the way to the shack were only a repetition of what he had already said, and if it might be argued that they were not strictly part of the *res gestae*, still their erroneous admission could not be held to have been prejudicial.

The statements made by Christianson at the shack are admissible on another well recognized rule of evidence, which is to the effect that statements made by a victim in the hearing of the defendant, relating to the matter at issue, which would naturally call for reply, if the defendant did not desire to acquiesce in them, are admissible. The authorities sustaining this rule are counted by the score and it is hardly necessary to cite more than the opinion of this court in *State v. Baruth,* 47 Wash. 283, 91 Pac. 977, where it is said:

"Counsel for the state contend broadly that any statement or declaration of the person injured made to a third person, in the presence or hearing of the accused, either charging him directly with the crime or pertaining to matters otherwise relevant to the issue, if not denied by the accused, may be given in evidence against him as an admission on his part. On the other hand, the appellant contends that the mere presence or hearing of the accused is not alone sufficient to render the evidence admissible, but the statements must relate to the matter at issue, must be addressed to the accused, or made under such circumstances as would ordinarily and naturally call for some action or reply from persons similarly situated; and that, if the condition be one of doubt as to whether a reply should or should not have been made, the evidence should not be received. There are cases which support the respondent's contention, many of which are collated in its brief. But we think the better authority is with the appellant."

The appellant argues against the applicability of this rule in this instance for the reason that he claims that, at the time he was in the shack, he was in such condition that, although he was physically present, he cannot be said to have been mentally present. This was a question, however, upon which there was conflicting evidence, the most of it being to the effect that

he was perfectly conscious of all that was going on, and testimony was introduced as to statements he made himself at that time, from which the jury could have well been satisfied that he was perfectly conscious of all that was transpiring. Not only this, but a great deal of other testimony in the case, including the defendant's own statement given at the coroner's inquest, is nearly conclusive that he was both physically and mentally present in the fisherman's shack.

It is finally argued that the evidence was insufficient to sustain the verdict. The defendant's theory was that the deaths occurred from an explosion of gasoline, which was used as the motive power of the dredge. The theory of the state was that the explosion was caused by dynamite thrown by the defendant into the cabin where the deceased were sitting. We see no necessity of detailing all the evidence, direct and circumstantial, introduced for and against the defendant. It was amply sufficient to prove beyond a reasonable doubt all the elements necessary to constitute murder in the first degree. If the jury believed the evidence of the state, there was established the premeditation, deliberation, the unlawful, wilful, felonious and malicious design, and the acts done in fulfillment of it, which established the defendant's guilt.

Finding no error, the judgment is affirmed.

PARKER, C. J., HOLCOMB, MITCHELL, and HOVEY, JJ., concur.