[No. 17893. Department One. June 22, 1923.]

## NARCISCO LUCCHESI et al., Respondents, v. E. W. REYNOLDS et al., Appellants.[1]

EVIDENCE (52)—RES GESTAE—STATEMENTS ACCOMPANYING EVENT—INVOLUNTARY STATEMENTS. There is a reasonable presumption that statements are spontaneous utterances springing out of the transaction itself, and not the result of premeditation or design, and are therefore admissible as part of the *res gestae* in an action against an employer for wrongful death, where an employee, in answer to questions by a police officer, stated that his auto was exceeding the speed limit when he ran down and killed a child, the accident having occurred between 4:00 and 4:15 o'clock when the employee took the body to the hospital and telephoned the officer, who arrived and questioned him about 4:30 or 4:45 o'clock.

TRIAL (43)—CONDUCT OF COUNSEL—SHOWING INDEMNITY INSURANCE. In an action for wrongful death, it is reversible error, requiring a new trial, for counsel, after objections sustained and admonition to the jury to disregard his references to the fact that appellants might be protected by indemnity and liability insurance, to continue to refer thereto in his argument to the jury and deliberately aggravate the situation.

Appeal from a judgment of the superior court for Pierce county, Askren, J., entered June 27, 1922, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for wrongful death. Reversed.

*J. H. Gordon* and *A. O. Burmeister,* for appellants.

*S. A. Gagliardi* and *Bates & Peterson,* for respondents.

MACKINTOSH, J.—Between 4 and 4:15 o'clock in the afternoon of December 23, 1921, a girl, seven and one-half years of age, the child of the respondents, was killed by being struck by an automobile owned by the appellants, at that time being operated by one of their employees. The trial of the case before a jury resulted

[1]Reported in 216 Pac. 12.

in a verdict in favor of the respondents, and from a judgment entered thereon, this appeal is taken.

Two principal errors are argued in behalf of a reversal; the first, that a police officer of the city of Tacoma (where the accident occurred) was allowed to testify as to a conversation had with the appellants' employee, and it is claimed that this testimony should not have been admitted for the reason that it was not part of the *res gestae*. The facts in regard to this phase of the case are as follows: immediately upon striking the child, the employee jumped from his machine, picked up the body of the child and took it to its parents' residence near by, and it appears from the testimony that at that time the child was probably already dead. Accompanied by the child's mother, the employee immediately took the body in the automobile of a passer-by to the Tacoma General Hospital, and from there he telephoned to the police department, reporting the accident, and was advised that an officer would come at once to the hospital. This officer was the witness whose testimony is objected to. He arrived at the hospital at about 4:30 or 4:45 o'clock, and testified that he there at once interviewed the employee, who, in response to his inquiries, stated that, at the time of the accident, he was operating the car at about twenty-five or twenty-eight miles an hour, which was in excess of the lawful limit.

The .objection to this testimony is that it was so lacking in the elements of spontaneity that it could not be brought within the rule of permissible evidence; that so much time had elapsed between the accident and the recitation of its occurrence, and so many things had intervened during that time, that what was said amounted only to the narration of a past event, and was

not an instinctive utterance made as a result of the exciting influence of the main event. As further substantiation of the appellants' position in this regard, it is argued that the statements of the employee were not voluntarily made by him, but were answers to questions directed at him by the police officer. This court, with most other modern courts, has, as we have heretofore said, considerably relaxed the one-time rule that testimony to be admissible as part of the *res gestae* must be contemporaneous with the happening of the event, and has established the rule, as announced in *Heg v. Mullen*, 115 Wash. 252, 197 Pac. 51, and *State v. Goodwin*, 119 Wash. 135, 204 Pac. 769, that the utterances need not be contemporaneous with and accompany the event, but that they are admissible when they are made under such circumstances ''as will raise a reasonable presumption that they are the spontaneous utterances of thoughts created by, or springing out of, the transaction itself, and so soon thereafter as to exclude the presumption that they are the result of premeditation or design.'' It would seem that, under this rule, the testimony objected to was properly admitted. The time which had elapsed between the event and the conversation was not long; the conversation was held in a place where lay the dead body of the victim of the unfortunate event; the employee (a young man about twenty-two years of age) would still be laboring under the excitement occasioned by such an accident and could not have had, in the usual course of nature, what is known in another branch of the law as sufficient ''cooling time'' to make those declarations concerning the accident the result of deliberation indulged in after the exciting influence had been dissipated and lost its sway. The picking up of the body, its carriage to the hospital, the call for the police, the

arrival of the officer, the conversation in regard to the happening, are all so closely interwoven, both in incident and time, that the court cannot say that the event had terminated, but must hold that statements made under such circumstances were spontaneous and instinctive and logically related to the main event. The fact that the statements testified to by the officer had been elicited by his questions cannot militate against their reception. Of course, they were not involuntary exclamations, but they were none the less spontaneous and instinctive.

It would do little good to refer to cases which have held either one way or the other as to the admissibility of evidence as part of the *res gestae,* for, as was said by Wigmore in his work on Evidence, quoted by us in *State v. Goodwin, supra:*

" 'To argue from one case to another on this question of "time to devise or contrive" is to trifle with principle, and to cumber the records with unnecessary and unprofitable quibbles'."

The rule which we make on the admission of this testimony goes not nearly as far as that announced in *Walters v. Spokane International R. Co.,* 58 Wash. 293, 108 Pac. 593, 42 L. R. A. (N. S.) 917, which makes a rather extreme allowance of such testimony, and we find nothing in *Harris v. Carstens Packing Co.,* 43 Wash. 647, 86 Pac. 1125, 6 L. R. A. (N. S.) 1164; *Henry v. Seattle Elec. Co.,* 55 Wash. 444, 104 Pac. 776; and *Singer v. Metz Co.,* 101 Wash 67, 171 Pac. 1032, cited from this court by the appellants, persuasive against our present ruling.

The second point urged by the appellants is that one of respondents' attorneys, in his argument to the jury, engaged in such prejudicial remarks as to preclude the appellants from a fair trial. The record shows that,

during his argument to the jury, counsel made reference to the fact that the appellants might be protected by indemnity and liability insurance. The attention of the court having been called to this matter, the jury was instructed that it was not an issue in the case. If the matter had closed there, it may be that the error would not have been sufficient to entitle the appellants to take advantage of it for the purpose of securing a new trial. But counsel continued and by his remarks aggravated the already delicate situation. We have for many years said that the injection of this matter into a trial of personal injury actions is one which will not be countenanced, and that when it is deliberately done the penalty is the setting aside of the verdict partly secured thereby, and that the error is so flagrant that it cannot be cured by instructions of the court to disregard it, for such cautionary admonitions cannot uproot the plant, which proceeds to bear its desired and usual fruit. *Iverson v. McDonnell,* 36 Wash. 73, 78 Pac. 202; *Lowsit v. Seattle Lumber Co.,* 38 Wash. 290, 80 Pac. 431; *Stratton v. Nichols Lumber Co.,* 39 Wash. 323, 81 Pac. 831, 109 Am. St. 881; *Westby v. Washington Brick, Lime & Mfg. Co.,* 40 Wash. 289, 82 Pac. 271; *Birch v. Abercrombie,* 74 Wash. 486, 133 Pac. 1020, 135 Pac. 821, 50 L. R. A. (N. S.) 59; *Shay v. Horr,* 78 Wash. 667, 139 Pac. 604; *Moy Quon v. Furuya Co.,* 81 Wash. 526, 143 Pac. 99; *Jensen v. Schlenz,* 89 Wash. 268, 154 Pac. 159; *Gianini v. Cerini,* 100 Wash. 687, 171 Pac. 1007. In the last three cases a reversal was not permitted, for the reason that the liability insurance issue was properly in the cases under the particular circumstances of each, but we nevertheless in those cases reiterated the rule, as appears in *Jensen v. Schlenz, supra,* that:

". . . if it be apparent that counsel deliberately sets about, although in an indirect way, to inform the jury that the loss, if any, will fall upon an insurance company instead of the defendant, his conduct will be held prejudicial."

And as said in *Shay v. Horr, supra,* "the striking of the answers conveying such information and the instructing the jury not to consider it will not save the error."

Respondents cite to us the cases of *Iverson v. McDonnell, supra; Johansen v. Pioneer Mining Co.,* 77 Wash. 421, 137 Pac. 1019; *Gianini v. Carini, supra,* and *Canfield v. Seattle Cornice Works,* 122 Wash. 318, 210 Pac. 773, as supporting their contention that, "if such information comes about naturally and is incident to a lawful inquiry, there can be no error." The facts in the case before us, however, do not show such a natural and incidental process, but a deliberate one. Nor does the situation come within the rule of the last cited case that some misconduct is so harmless that an instruction to disregard it will work a cure.

For the error last discussed, the judgment is reversed and a new trial is ordered.

MAIN, C. J., BRIDGES, and MITCHELL, JJ., concur.