[No. 22838. *En Banc.* August 18, 1931.]

EARL R. FIELD, *Respondent,* v. NORTH COAST TRANS-
PORTATION COMPANY *et al., Appellants.*[1]

[1] Reported in 2 P. (2d) 672.

*Poe, Falknor, Falknor & Emory,* for appellants.
*Vanderveer, Beardslee & Bassett,* for respondent.

PARKER, J.—The plaintiff, Field, seeks recovery of damages for injuries to his person and to his automobile, claimed as the result of the negligent driving of a stage of the defendant transportation company. The insurance association was made a defendant because of its having issued and filed with the department of public works, as required by law, its insurance policy, indemnifying persons sustaining injuries to their persons or property resulting from the negligence of the transportation company in the sum of five thousand dollars. The cause proceeded to trial in the superior court for King county, sitting with a jury, and resulted in verdict and judgment awarding to Field recovery against the transportation company and insurance association, from which they have appealed to this court. They answered, and have appeared jointly by the same counsel at all stages of the proceedings in the cause.

Field is a trial court stenographic reporter, residing and maintaining his principal place of business in Seattle. At the time in question, he was engaged in reporting the trial proceedings in a case passing through the course of a protracted trial in the superior court for Grays Harbor county at Montesano. The transportation company operates auto stages as a public carrier between Tacoma and Olympia, and elsewhere.

During a week-end adjournment of the court at Montesano, Field returned to Seattle, intending to return to Montesano late Sunday afternoon. Accordingly, he, with several others, left Seattle for Montesano at about four o'clock Sunday afternoon. They were in two automobiles, Field driving his own car and James Palmer driving his own car. It was agreed

that the two groups should keep in touch with each other on the way. Sometimes one car was ahead, and sometimes the other car was ahead.

At a gas station some ten miles north of Olympia, the Palmer car had developed engine trouble and was stopped with a view of investigating and remedying the trouble. The Field car, being then in the rear, shortly came up and stopped. Presently, the Palmer car, apparently being able to proceed, did so, taking the lead. The Field car followed some distance in the rear. A few miles further south, the Field car came up to the Palmer car, which had again stopped off the pavement on the right side of the highway because of engine trouble. The Field car stopped momentarily, but, it being believed that the Palmer car could presently proceed, the Field car passed on some distance, probably three-quarters of a mile, to a gas station where parking space was available, and stopped, waiting for the Palmer car to come.

After waiting for a short time, the Palmer car not appearing, Field drove onto the pavement and back towards where he had left the Palmer car. After proceeding a short distance, Field saw the Palmer car approaching. Just about the time the two cars were opposite each other, probably immediately thereafter, the Field car was struck by one of the transportation company's stages, which had been following it some distance behind, rendering the Field car practically a complete wreck and very seriously injuring Field. The accident occurred where the pavement curved to the right in the direction the Field car and the stage were proceeding; there also being there present such obstruction of view by the bank and the trees thereon that the view ahead was very much limited. It had been raining, and the pavement was wet and slippery.

Whether the driving of the stage was being negli-

gently done, as to its speed, as to the failure of its driver to have it under proper control, and as to its driver attempting to pass the Field car on the left, in view of the curve and existing conditions, are matters of conflicting evidence and were for the jury to decide. The same may be said as to whether the driving of the Field car was being negligently done, as to whether it was suddenly stopped or suddenly slowed down upon the pavement, in view of existing conditions. No contention is here made but that these were, under the evidence, jury questions.

During the cross-examination by Mr. Vanderveer, counsel for Field, of the stage driver, a witness for appellants, the following occurred:

Mr. Vanderveer: Q. "Let us ask you whether or not immediately following the accident a gentleman came up to you and expressed himself very critically to you about the way that you were driving, the manner you were driving on the pavement?" Mr. Falknor [counsel for appellants]: "I object to that as wholly immaterial, incompetent. Supposing he did, what proof is that?" Mr. Vanderveer: "It is *res gestae*." Mr. Falknor: "At every accident a fellow will come along and criticize somebody. It is wholly immaterial and not cross-examination."

The court overruled the objection, and the witness was required to answer, his answer being: "He did." The record fails to show that the gentleman so expressing himself had any connection whatever with the accident. Manifestly, he was merely present as a bystander. He was not produced as a witness upon the trial. It is contended in behalf of appellants that the admission of this question addressed to the stage driver upon cross-examination and his answer thereto was error to the prejudice of appellants.

Was this proper cross-examination? The stage driver had testified to his manner of driving the stage,

his attempt to stop it and avoid striking the Field car, and to other facts tending to show he was free from negligence. Manifestly, the stage driver could not be contradicted by the gentleman bystander's testifying as a witness in general language that he considered the driver to have been carelessly driving the stage. That would be but an expression of a mere opinion. Plainly, we cannot treat the gentleman's criticism as being more than that, there being no evidence as to what his words were. Plainly, we think this was not proper cross-examination.

■ Was the gentleman's expression admissible under the *res gestae* rule? It is argued by counsel for Field that it was, because of its near coincidence in time and place with the occurrence of the accident. Let us concede that the expression was sufficiently near in time and place to come within the *res gestae* rule, and also sufficiently spontaneous; still, to our minds that does not necessarily render it admissible under the *res gestae* rule. The inquiry still remains: Did the gentleman's expression contain any statement of any fact provable by any such spontaneous expression?

It clearly was not proven to be any expression of a fact. All we can possibly make of it is that the gentleman seemed to be of the opinion that the stage was being carelessly driven. Such an expression is far different from a witness' spontaneously saying, under the dominating promptings of an occasion, "The brakeman kicked me off the train," as in *Dixon v. Northern Pac. R. Co.*, 37 Wash. 310, 79 Pac. 943, 107 Am. St. 810, 68 L. R. A. 895; "The conductor kicked me off the car" and "The boy is off," as in *Britton v. Washington Water Power Co.*, 59 Wash. 440, 110 Pac. 20, 33 L. R. A. (N. S.) 109; "My! Art, that car is coming fast," and "I am in no hurry," as in *Heg v. Mullen,* 115 Wash. 252, 197 Pac. 51; and "I was operat-

ing the car at about twenty-five or twenty-eight miles an hour," as in *Lucchesi v. Reynolds,* 125 Wash. 352, 216 Pac. 12. These were each an expression stating a specific fact and not a mere statement of opinion or feeling upon the part of the one making it.

It does seem that, when we have considered expressions of a *res gestae* nature made by one standing in close relationship to one liable for the occurrence, we have recognized the *res gestae* rule to be capable of a somewhat more liberal application as to the nature of the spontaneous expression, as in *Roberts v. Port Blakely Mill Co.,* 30 Wash. 25, 70 Pac. 111, where there was drawn in question an accident claimed to have been the result of defective car wheel flanges; the witness testifying, referring to the general superintendent of the mill company: "I heard him say—he was looking at the flanges, and he said, if the company use any more Tacoma wheels, he would not work any longer for them." This was held admissible. And also as in *Swanson v. Pacific Shipping Co.,* 60 Wash. 87, 110 Pac. 795, where there was drawn in question an injury occurring on board a ship, and just prior to or practically at the time of the accident injuring the plaintiff, the captain, manifestly being prompted by apparent carelessness on the part of the crew, called out, "What are you doing up there? You be killing some one here pretty soon, pretty nigh killed a man now." This was also held admissible. But even in each of these cases the court was considering apparently nothing more than the question of whether or not the expression was sufficiently coincident in time and place with the accident to admit it as a *res gestae* expression.

In *Henry v. Seattle Elec. Co.,* 55 Wash. 444, 104 Pac. 776, there was involved an injury caused by the claimed careless manner in which a motorman was driving a

street car. Shortly after the accident, the conductor of the street car said: "This motorman is green at the business." Sustaining the ruling of the trial court that this was inadmissible, Judge Morris, speaking for the court, said:

"In order to be a part of the *res gestae,* the subsequent declaration must explain or in some way characterize the main fact. It must not be the narration of a past event, nor the expression of an opinion. In the evidence before us, the words of the conductor did not form part of the main transaction; nor did they in any manner qualify or explain any act of the driver of the wagon [plaintiff], or the employees of respondent [company] at the time of the happening of the accident. It was nothing more than an expression of an opinion which was in no sense competent, and was properly stricken."

Our late decision in *Crock v. Magnolia Milling Co.,* 147 Wash. 589, 266 Pac. 727, is in harmony with this view. We have not had brought to our attention, nor do we have in mind, any other of our own decisions bearing upon our real problem here to be solved, though we have several others wherein there is considered the admissibility of claimed *res gestae* expressions in so far as the question of their coincidence with the occurrence in question as to time and place is concerned.

In *Barker v. St. Louis I. M. & S. R. Co.,* 126 Mo. 143, 28 S. W. 866, 26 L. R. A. 843, 47 Am. St. 646, it was held that a conductor's exclamation that a passenger who had been ejected "ought to have broke his darn neck," made to a person who had come to him very soon after the occurrence, saying he feared the man was hurt in the ejection, with a request that he be taken on board again, was held not admissible as a part of the *res gestae.* In *Louisville R. Co. v. Johnson's Adm'r,* 131 Ky. 277, 115 S. W. 207, 20 L. R. A.

(N. S.) 133, there was drawn in question the death of a person who had been killed by being struck by a street car of the company. Justice Carroll, speaking for the court, said:

"The defendant company offered to prove by a witness that, immediately after the accident, he got off the car before it stopped and went to the place where the body of deceased was lying, and heard a man who was in the crowd surrounding the body, but whom he did not know, say, not in answer to any question, but as a spontaneous exclamation, 'No wonder he was hurt, the way you fellows were wrestling.' The trial judge refused to admit the statement heard by this witness, and of this ruling appellant complains. . . .

"In our opinion, it would be a dangerous enlargement of the *res gestae* rule to permit the declarations of bystanders in cases like this to be received as evidence. It would open wide the door for the admission of reckless or thoughtless or ill-considered exclamations, and at the same time would put it out of the power of the party whose interest they adversely affected to investigate, impeach, contradict, or explain the situation, temperament, character, or position of the declarant. To permit a person to testify that he heard a bystander state how or what caused an accident would sanction the admissibility of hearsay evidence of the most unreliable and unsatisfactory character. The declarations of agents and servants of a corporation, for whose acts the principal is responsible, when brought within the *res gestae* rule, are permitted to be introduced for the purpose of fixing liability upon the principal, and upon these statements, if they are sufficient to sustain a verdict, the jury may rest their finding. And so the declarations of a party injured, if brought within this rule, are competent in his behalf; but, to these actors in the occurrence, the admissibility of evidence as a part of the *res gestae* should, except in rare cases, be limited. The bystander in this case, who made the remark attempted to be introduced as evidence, was not a party to the transaction. He had no connection with it. The declaration was merely an expression of opinion on the part of

the declarant. It did not describe anything he saw or did. If he had been introduced as a witness, it would not have been competent to have permitted him to make the statements attributed to him, and its inherent incompetency would have been aggravated by permitting another person to repeat it."

This court seemingly has not restricted the admissibility of *res gestae* expressions of fact made by bystanders to the extent the Kentucky court has, but we are not out of harmony with that court touching the nature of the expressions to render them admissible under the *res gestae* rule. In *Wheeler v. Oregon R. & N. Co.*, 16 Ida. 375, 102 Pac. 347, a claimed *res gestae* expression of a Mrs. Grant who was injured at the same time the plaintiff's child was killed, for which the suit was prosecuted, was involved. The following quotation from the opinion of the court, self-explanatory as to the manner in which the question was presented, is enlightening:

"It is next urged that the court committed error in striking out the evidence of witness, Mrs. F. D. McCain. Mrs. McCain was called as a witness for the defendant and upon direct examination testified: 'Immediately after this accident heard Mrs. Grant say that the cause of her accident was her own fault, and that no one was to blame but herself.' Upon cross-examination it appeared that Mrs. Grant was carried into the house of Mrs. McCain after the injury, when this statement was made. The plaintiff moved that this testimony be stricken out as hearsay and not part of the *res gestae,* and the motion was sustained. This statement of Mrs. Grant certainly could not be against interest, for she had no interest in the result of the trial. The plaintiff in the case was the father of the child injured. Mrs. Grant had no interest in the result so far as the record in this case appears. Her declarations were merely hearsay and could not bind the plaintiff. (*Norfolk & W. R. Co. v. Groseclose's Adm'r,* 88 Va. 267, 13 S. E. 454, 29 Am. St. Rep. 718; Elliott on Evidence, § 443.)

"Neither was this evidence admissible as part of the *res gestae*. This statement made by Mrs. Grant was not a statement of the facts surrounding the accident, but was a conclusion or opinion, she saying that the accident was her own fault and no one else was to blame. That was an opinion, not a statement of the facts. She may have been in error as to who was at fault. As said by the court in the case of *Lane v. Bryant*, 9 Gray (Mass.) 245, 69 Am. Dec. 282: 'The declaration of the defendant's servant was incompetent, and should have been rejected. It was made after the accident occurred and the injury to the plaintiff's carriage had been done. It did not accompany the principal act, on which the whole case turned, or tend in any way to elucidate it. It was only the expression of an opinion about a past occurrence, and not part of the *res gestae*.' "

We are of the opinion that admission in evidence, over the objection of counsel for appellants, of the question above quoted, addressed to the driver of the stage, and his affirmative answer thereto, constituted error prejudicial to the rights of appellants of such serious nature as to entitle them to a new trial.

 There was evidence warranting the jury in believing that the stage driver attempted to pass the Field car on the left, and, in doing so, the stage slightly touched the Palmer car going in the opposite direction, causing Palmer to turn quickly to his right off the pavement. Palmer was not produced as a witness, he having died since the occurrence of the accident, though not as the result thereof. A witness testified that Palmer said, very soon after the stage passed his car and after he had gotten off the pavement, "It is a good thing I ran off the highway or we would have had a head-on collision."

This, it seems to us, was merely an expression of opinion by Palmer after the accident. It may be that it was sufficiently coincident in time and place with

the accident to render it admissible within the *res gestae* rule, though we regard that as doubtful. However, the expression being one of opinion rather than a statement of fact by one who was not a participant in the accident, we are of the opinion that it was not admissible as a *res gestae* expression under the law we have above noticed. We have not overlooked our language in *Lucchesi v. Reynolds,* 125 Wash. 352, 216 Pac. 12, that:

"This court, with most other modern courts, has, as we have heretofore said, considerably relaxed the one-time rule that testimony to be admissible as part of the *res gestae* must be contemporaneous with the happening of the event."

That and language of similar import used in some of our other decisions, it is to be noticed, when critically examined in its setting, has been used only with reference to the question of coincidence, as to time and place of the claimed *res gestae* expression, with the accident. But that is not the real inquiry here. We have assumed that the expressions of both the gentleman bystander and of Palmer were sufficiently coincident with the accident as to time and place to render their expressions admissible had their expressions been otherwise admissible. The controlling consideration here is that neither the gentleman bystander nor Palmer would be permitted to testify in the general opinion language of their expressions, or in general opinion language of the same import; especially since they were not participants in the accident, did not suffer therefrom, and were not in the least responsible therefor or representing anyone responsible therefor. This, in its last analysis, is a question of hearsay opinion testimony by nonparticipants in the accident. We conclude that the claimed *res gestae* expression made by Palmer, as well as that made by the

gentleman bystander, was erroneously received in evidence.

It is contended in behalf of appellants that the trial court erred to their prejudice, especially to the prejudice of the transportation company, in instructing the jury that, "Your verdict will be for the plaintiff against both defendants or against the plaintiff and for both defendants." The court accordingly submitted to the jury but two forms of verdict, thus leaving the jury wholly unadvised as to the limit of the liability of the insurance association. The limit of the liability of the insurance association was concededly five thousand dollars, that being the amount of its policy indemnifying Field, if he was injured as a result of the transportation company's negligence. The limit of the liability of the transportation company, as claimed in the complaint, was twenty-four thousand dollars. The whole of the verdict of the jury reads, apart from the title of the cause and the signature of the foreman of the jury,

"We, the jury in the above entitled cause, do find for the plaintiff in the sum of Fifteen Thousand One Hundred Twenty Five Dollars ($15,125.00)."

It is argued that this manner of submitting this cause to the jury had the prejudicial effect of suggesting to the jury that the insurance association was liable for the whole of the damage, if any, whatever its amount, suffered by Field. Counsel argue that there should not be in a trial of this nature any suggestion of indemnity insurance beyond what is in amount for the benefit of the damaged person, invoking by way of analogy the rule applicable where there is no insurance for the benefit of such person. Of course, this is not a case of indemnity being exclusively for the benefit of the transportation company, but it is a case of there being no indemnity insurance beyond the limit

of five thousand dollars for the benefit of Field as a third person, if he were in fact damaged.

It seems to us that the transportation company had a right to have the jury advised by proper instruction that the insurance liability was limited to five thousand dollars. We make this observation in view of our conclusion that a new trial must be granted, though we do not regard this particular contention sufficiently grounded of itself to call for a new trial, since there was no instruction asked of the court so advising the jury. We are of the opinion that the transportation company was entitled to have the jury advised touching the limit of the liability of the insurance association, if requested to so advise the jury.

It seems to us unnecessary to notice further claims of error, since they do not to our minds suggest probable commission of error on a retrial of the case.

The judgment is reversed, and the cause remanded to the superior court with directions to award appellants a new trial.

TOLMAN, C. J., MITCHELL, HOLCOMB, FULLERTON, and BEELER, JJ., concur.

MAIN, J. (dissenting)—In my opinion, the question propounded to the driver of the stage, which was answered after objection, was proper cross-examination. It bore directly upon the credibility of the witness and the weight to be given to his testimony. It being material for this purpose, the fact, if it be a fact, that it was an expression of opinion does not preclude the inquiry. I therefore dissent.

BEALS and MILLARD, JJ., concur with MAIN, J.