## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
) No. 75690-7-I
Respondent, )
) DIVISION ONE
v. )
) UNPUBLISHED OPINION
SERGIO AGUSTIN DONATO, )
)
Appellant. ) FILED: August 20, 2018

TRICKEY, J. — The State charged Sergio Donato with second degree assault by strangulation, felony harassment, and witness tampering, all with domestic violence aggravating factors. At trial, the State introduced a translated transcript of a jail telephone call between Donato and the victim, Flor Elise Rosas-Sosa. The trial court admitted the evidence as Donato's adoptive admissions despite his confrontation clause and hearsay objections. Although Rosas-Sosa's statements were nontestimonial and do not implicate Donato's Sixth Amendment right to confrontation, they were improperly admitted as adoptive admissions. Because the error was not harmless, we reverse and remand for a new trial.

### FACTS

Very early on the morning of May 6, 2016, several Renton police officers responded to Flor Elise Rosas-Sosa's 911 call. One of the officers met Rosas-Sosa in a vehicle outside of her residence. Rosas-Sosa was sobbing, shaking, and visibly distressed. She was wet and disheveled and her left knee was scratched and bloody.

Rosas-Sosa spoke Spanish and very little English, and none of the responding officers spoke Spanish. An officer was able to obtain information through a conversation of limited English and hand gestures. The officer concluded that Rosas-Sosa's boyfriend had hit her on the back of her head and dragged her by her hair. The officer also learned that Rosas-Sosa was pregnant.

Rosas-Sosa indicated that the argument had occurred at her nearby residence. When an officer knocked on the door to the residence, Donato opened the door wearing shorts and no shoes. He told the officer that he had just awoken. The officer arrested Donato. He denied hitting Rosas-Sosa. He said she had come home drunk, woken him up, and begun arguing with him.

Donato went to trial on charges of second degree assault by strangulation, felony harassment, and tampering with a witness, all with domestic violence aggravating factors. Neither Donato nor the State expected Rosas-Sosa to testify because she had been unresponsive to both parties and was near the due date for her pregnancy.

At trial, the State offered a translated transcript of a jail telephone call between Rosas-Sosa and Donato.[1] Donato had called Rosas-Sosa from jail soon after his arrest. The jail telephone call began with a warning that such calls are recorded and may be monitored.

The transcript included the following exchanges that detail Rosas-Sosa's description of the alleged assault:

---

[1] The jail telephone call was conducted in Spanish. The State played a redacted version of the Spanish audio recording for the jury.

[Rosas-Sosa:] "Baby, but [crying] why do you hurt me?

[Donato:] Look, I'm not going to . . .

[Rosas-Sosa:] There's no need to hit me as if I were a dog.

[Donato:] Sweetie . . . we can't talk about that here, okay?

. . . .

[Rosas-Sosa:] I was really scared, Sergio. I thought you wanted to kill me, and I was afraid. You had never done that before, to try to cut off my breathing. [crying] Never. And that really frightened me. I don't want to die. And you just didn't care, even though you know I'm pregnant. [sobbing]

[Donato:] Anyway, though, sweetie, I'm not going to be able to talk to you anymore. Okay? Because tomorrow they're going to issue a no contact order.

. . . .

[Rosas-Sosa:] I was frightened, Sergio. [crying] I mean, jeez, you wanted to kill me.

[Donato:] No. And let's not talk about that anymore here, okay?

. . . .

[Rosas-Sosa:] But since I'm soft, your hands don't hurt—that's why you prefer to hit me instead.

[Donato:] I can't talk to you here, okay?

. . . .

[Donato:] I can't . . . I can't talk about that. I can't be talking about that here anymore, my love.[2]

Donato objected to admission of Rosas-Sosa's statements on both confrontation clause and hearsay grounds.[3] In the alternative, he requested a limiting instruction to inform the jury that these portions of the transcript were not

---

[2] Ex. 6 at 3-13.

[3] Donato's pretrial brief includes a motion in limine to exclude all witness statements of witnesses who do not appear at trial. The recording and transcript were redacted to remove inadmissible ER 404(b) evidence. Parts of the transcript were also separately admissible for Donato's witness tampering charge as statements of a party-opponent. These portions of the transcript are not at issue in this appeal.

3

competent evidence to prove his harassment and assault charges. The trial court denied Donato's objection and request for a limiting instruction.

The trial court found that Donato had adopted the statements, "not necessarily by silence, but by failure to object."[4] Therefore, the statements were admissible as Donato's own statements. This portion of the transcript was admitted as a nonhearsay adoptive admission and was not subject to the confrontation clause. The trial court noted that the decision to admit these portions of the transcript was a threshold determination and that the jury would decide the ultimate issue of whether Donato adopted the statements.

Rosas-Sosa did not testify at trial. The State played a redacted version of the original jail telephone call recording in Spanish. The trial court admitted the redacted and translated transcript into evidence.

The jury acquitted Donato of second degree assault by strangulation and convicted him of the lesser degree offense of fourth degree assault. The jury also convicted Donato of felony harassment and witness tampering and found domestic violence aggravating factors on all three convictions.

Donato appeals.

ANALYSIS

Confrontation Clause

Donato claims that admission of the challenged portions of the transcript violated his Sixth Amendment right to confrontation. Specifically, he argues that Rosas-Sosa's statements were the functional equivalent of testimony to a

---

[4] 3 Report of Proceedings (RP) (June 7, 2016) at 287.

government agent because of the automated voice notification that the telephone call was recorded. We disagree.

The Sixth Amendment of the United States Constitution provides criminal defendants the right "to be confronted with the witnesses against him." U.S. CONST. amend VI. To protect this right, the confrontation clause bars out-of-court testimonial statements unless the witness is unavailable to testify and the defendant had prior opportunity for cross-examination. State v. Beadle, 173 Wn.2d 97, 107, 265 P.3d 863 (2011) (citing Crawford v. Washington, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)). But "not all out-of-court statements give rise to the protections of the confrontation right because not all speakers are acting as a 'witness' against the accused as described in the Sixth Amendment." State v. Wilcoxon, 185 Wn.2d 324, 325, 373 P.3d 224 (2016) (citing Crawford, 541 U.S. at 51). The confrontation clause applies only to "testimonial" statements. Wilcoxon, 185 Wn.2d at 331.

A testimonial statement "is designed to establish or prove some past fact, or is essentially a weaker substitute for live testimony at trial." Wilcoxon, 185 Wn.2d at 334. Such a statement is "the functional equivalent of in-court testimony." Wilcoxon, 185 Wn.2d at 334. A statement is testimonial when, "in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony." Ohio v. Clark, __U.S.__, 135 S. Ct. 2173, 2180, 192 L. Ed. 2d 306 (2015) (alteration in original) (quoting Michigan v. Bryant, 562 U.S. 344, 358, 131 S. Ct. 1143, 179 L. Ed. 2d 93 (2011)); see State v. Streepy, 199 Wn. App. 487, 494, 400 P.3d 339, review denied, 189

Wn.2d 1025, 406 P.3d 283 (2017). "[T]he relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred." Bryant, 562 U.S. at 360; see Streepy, 199 Wn. App. at 494.

In addition, the recipient of the statements is highly relevant. State v. Scanlan, 2 Wn. App.2d 715, 728, 413 P.3d 82 (2018), petition for review filed, No. 95971-4 (Wash. June 18, 2018). "Statements made to someone who is not principally charged with uncovering and prosecuting criminal behavior are significantly less likely to be testimonial than statements given to law enforcement officers." Clark, 135 S. Ct. at 2182; see Scanlan, 2 Wn. App.2d at 728.

The appellate court only examines whether a defendant's right to confrontation was violated if the given statement is testimonial. Wilcoxon, 185 Wn.2d at 331-32. Appellate courts review alleged violations of the confrontation clause de novo. State v. Jasper, 174 Wn.2d 96, 108, 271 P.3d 876 (2012).

In this case, Rosas-Sosa statements were not an effort to create out-of-court substitute testimony. Rather, they reflect her attempt to have Donato account for his abusive behavior. She expressed her fear of Donato's actions and asked why he had hurt her. From the circumstances and content of the conversation, Rosas-Sosa's purpose was to voice her fear and attempt to understand Donato's behavior. Rosas-Sosa was discussing her relationship with her boyfriend, not establishing Donato's guilt for prosecution.

Further, additional topics of the conversation underscore that Rosas-Sosa's purpose was not to create substitute testimony for use in prosecution. During the telephone call, Rosas-Sosa and Donato discussed ways to minimize the criminal charges and circumvent the impending no contact order. Thus, Rosas-Sosa was helping to undermine, not to assist, the prosecution.

We conclude that Rosas-Sosa's statements were not testimonial and, therefore, did not implicate Donato's rights under the confrontation clause.

### Adoptive Admission

Donato claims that the trial court erred by admitting portions of the transcript containing Rosas-Sosa's description of the events as nonhearsay adoptive admissions. We agree. Rather than adopt Rosas-Sosa's statements, Donato repeatedly objected to discussing her accusations.

Admissions by party-opponents are excluded from the definition of "hearsay." ER 801(d)(2). This includes adoptive admissions which are "statement[s] of which the party has manifested an adoption or belief in its truth." ER 801(d)(2)(ii).

"[W]hen a statement is made in the presence and hearing of an accused that is accusatory or incriminating in character, and such statement is not denied, contradicted, or objected to by him, both the statement and fact of his failure to deny, contradict, or object are admissible" as evidence of acquiescence in its truth. State v. Redwine, 23 Wn.2d 467, 470, 161 P.2d 205 (1945), overruled on other grounds by State v. Robinson, 24 Wn.2d 909, 917, 167 P.2d 986 (1946)). These are statements that "would naturally call for a reply if the defendant did not desire

7

to acquiesce in them." State v. Goodwin, 119 Wash. 135, 140, 204 P. 769 (1922). A party-opponent can manifest adoption of a statement by words, gestures, or silence. State v. Neslund, 50 Wn. App. 531, 550, 749 P.2d 725 (1988).

Silence constitutes admission only if the party-opponent heard the accusatory or incriminating statement, was physically and mentally able to respond, and "the statement and circumstances were such that it is reasonable to conclude the party-opponent would have responded had there been no intention to acquiesce." Neslund, 50 Wn. App. at 551. "The circumstances must also be such that 'an innocent defendant would normally be induced to respond.'" Neslund, 50 Wn. App. at 551 (quoting United States v. Sears, 663 F.2d 896, 904 (9th Cir. 1981), cert. denied sub nom. Werner v. United States, 455 U.S. 1027, 102 S. Ct. 1731, 72 L. Ed. 2d 148 (1982)).

When a trial court admits evidence as an adoptive admission by silence, the jury determines whether the defendant heard, understood, and acquiesced to the statement. Neslund, 50 Wn. App. at 551. "Whether an accused has made an adoptive admission is thus a matter of conditional relevance to be determined ultimately by the jury." Neslund, 50 Wn. App. at 551-52.

A trial court's decision on the admissibility of evidence is reviewed for abuse of discretion. State v. Dobbs, 180 Wn.2d 1, 10, 320 P.3d 705 (2014). "A trial court abuses its discretion when its decision 'is manifestly unreasonable or based upon untenable grounds or reasons.'" Dobbs, 180 Wn.2d at 10 (quoting State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)). A decision is based on untenable grounds if it is based on an incorrect standard or misapplication of law, or the facts

do not meet the requirements of the correct standard. <u>Ryan v. State</u>, 112 Wn. App. 896, 899-900, 51 P.3d 175 (2002).

Here, the trial court admitted portions of the transcript as adoption "by failure to object" after applying the <u>Neslund</u> test.[5] The trial court found that the evidence satisfied the threshold requirements for admission, and that the jury would decide if the statements were adopted. But <u>Neslund</u> applies only to adopted admissions by silence. <u>See</u> 50 Wn. App. at 551-52; <u>State v. Cotten</u>, 75 Wn. App. 669, 689, 879 P.2d 971 (1994); <u>State v. King</u>, 113 Wn. App. 243, 281 n.11, 54 P.3d 1218 (2002). Because the trial court specifically determined that Donato had adopted Rosas-Sosa's statements by failing to object, rather than by silence, <u>Neslund</u> is inapposite. Therefore, the trial court applied the incorrect test for admissibility to the challenged portions of the transcript. This was an abuse of discretion. <u>See</u> <u>Ryan</u>, 112 Wn. App. at 899-900.

Furthermore, the trial court erred in concluding that Donato failed to object to Rosas-Sosa's statements. The transcript of the jail telephone call shows that Donato refused to discuss the accusations made by Rosas-Sosa, repeatedly telling her that they could not talk about the issues. While he did not affirmatively deny the accusations, his statements are clear objections to the topic of conversation. Because Donato explicitly objected, Rosas-Sosa's statements cannot be considered his adopted admissions. Therefore, the trial court's decision to admit the evidence was made on untenable grounds and was an abuse of discretion. <u>See</u> <u>Ryan</u>, 112 Wn. App. at 899-900.

---

[5] 3 RP (June 7, 2016) at 286-87.

9

<u>Harmless Error Analysis</u>

The State argues that any error in admitting the evidence was harmless due to the independent evidence supporting the convictions. The State's emphasis on the adoptive admissions as a substitute for Rosas-Sosa's testimony and Donato's failure to deny her accusations as evidence of guilt, belies this contention.

An erroneous evidentiary ruling does not require reversal unless the defendant was prejudiced. <u>State v. Thomas</u>, 150 Wn.2d 821, 871, 83 P.3d 970 (2004). For evidentiary issues without constitutional implications, an error "is not prejudicial unless, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred." <u>State v. Tharp</u>, 96 Wn.2d 591, 599, 637 P.2d 961 (1981). "The improper admission of evidence constitutes harmless error if the evidence is of minor significance in reference to the overall, overwhelming evidence as a whole." <u>State v. Bourgeois</u>, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997).

Prior to closing argument, the State acknowledged the importance of the statements in the transcript for Donato's felony harassment charge. The prosecutor noted that "all of the evidence that could support this charge really is found more -- is found more so in the -- in the phone call as opposed to the testimony of the officers." [W]hat Ms. Rosas-Sosa says on the phone is that she was really scared."[6]

The importance of this evidence was further underscored by the State's reliance on the adopted admissions in closing arguments. The prosecutor noted

---

[6] 6 RP (June 14, 2016) at 822-23.

that he would "hit on this a lot, so get ready to hear this quite a bit, but why on the jail phone call didn't [Donato] deny that he did that to her?"[7] Donato's failure to deny Rosas-Sosa's accusations was emphasized throughout the State's closing argument and revisited on rebuttal.

The State also invoked the transcript to demonstrate Rosas-Sosa's fear in the context of the harassment charge, highlighting that Rosas-Sosa expressed her fear of Donato's behavior and that he failed to question or deny her concerns. Additionally, the prosecutor likened the transcript to testimony from Rosas-Sosa. "And in this case through this phone call you heard Ms. Rosas-Sosa tell you what happened and heard the defendant's response and basically agreement with what she said as to what happened that evening, because he didn't deny it."[8]

Introduction of the transcript allowed for the jury to consider Rosas-Sosa's first-person account of the alleged assault, despite her unavailability to testify. The State essentially argued that Donato's failure to deny the allegations was proof of his guilt. In light of the State's emphasis on Rosas-Sosa's statements and Donato's failure to deny them, the evidence cannot be considered of minor significance. We conclude that, within reasonable probabilities, the outcome of the trial was materially affected by the erroneous admission of the challenged portions of the transcript. Therefore, the error was not harmless, and a new trial is required.

---

[7] 7 RP (June 15, 2016) at 867.
[8] 7 RP (June 15, 2016) at 873.

Reversed and remanded for a new trial.

_____Trickey, J_____

WE CONCUR:

_____        _____