[No. 26320. *En Banc.* April 28, 1938.]

ELIZABETH DEVLIN, *Respondent,* v. THE DEPARTMENT OF
LABOR AND INDUSTRIES, *Appellant.*[1]

¹Reported in 78 P. (2d) 952.

*The Attorney General* and *J. A. Kavaney, Assistant* (*V. D. Bradeson,* of counsel), for appellant.

*Vanderveer & Bassett,* for respondent.

STEINERT, C. J.—This is an action to establish a claim for widow's pension under the workmen's compensation act. Trial before a jury resulted in a verdict for the claimant. From a judgment on the verdict, defendant has appealed.

For some time prior to May 8, 1934, Felix Devlin, respondent's husband, was a steam engineer in the employ of the Seattle health department at its Firlands sanatorium some distance north of the city. His work shift varied from week to week. Some weeks it was from three o'clock in the afternoon until eleven o'clock at night; other weeks it was from eleven o'clock at night until seven o'clock in the morning. He worked five days a week and had Wednesdays and Thursdays off.

At the time with which we are here concerned, Mr. Devlin was fifty-four years of age. In outward appearance he was a healthy, robust man; and, so far as the record shows, he had not, for many years prior to 1934, been attended by a physician, except upon one occasion when he had an attack of bronchitis. However, according to several of his associates, he had, for some time prior to May, 1934, complained of pain in

the region of his heart, and the admitted fact is that he had heart disease, designated as "arterio-sclerosis and hypertrophy," which was of long standing.

On May 8, 1934, Mr. Devlin came home from work unexpectedly at about eight o'clock in the evening, which was three hours before the end of his shift. His wife observed that he was very pale, was perspiring freely, and that he held his hands over his chest. At the same time, he said to her:

"I have been strained, I have been suffering something fierce. . . . I have been doing that tough job underneath the mangle. . . . My, it was hot, I have been sweating terribly, get me my other wool undershirt."

He remained at home for five or ten minutes, during which time he drank a cup of tea and changed undershirts, and then returned to work. At the end of his shift at eleven o'clock, he was succeeded by another engineer, to whom he reported as follows: "I was working up under the mangle and I almost passed out. I think my pump is on the bum."

The two following days, May 9th and 10th, were his days off, and, consequently, he did not work, but on both days he looked pale and complained of being weak. On May 9th, he accompanied his wife to Seattle to look at some household furniture, but was compelled to rest during the trip. On May 10th, he was still weak, had no appetite, and did not want to exert himself.

On May 11th, during the afternoon, he had another attack and complained of pains in his chest, but, nevertheless, reported for work at eleven p. m. and finished his shift at seven o'clock the next morning. Likewise, on May 12th, 13th, 14th, and 15th, he reported for work at the regular hours and finished each shift, but during

this period his condition was unchanged; he was pale, weak, and listless.

Wednesday and Thursday, May 16th and 17th, were his days off. During the afternoon of May 16th, he accompanied his wife and children for about an hour on a walk of six or seven blocks, and afterwards helped his wife in getting dinner. In the evening, he spent some time in the yard or garden, chatting with friends; however, he had done no work in the garden for months. At the time of retiring that night, he did not appear to be suffering, although he was still weak.

On the morning of May 17th, he was seized with severe pains in his chest. A doctor who was summoned had him promptly put to bed. During the day, he suffered intermittent pains, and in the afternoon he had the appearance of being paralyzed. At about four-thirty o'clock in the afternoon, his condition became alarming, and the doctor was immediately called. Before the doctor's arrival, Mr. Devlin expired from coronary thrombosis or occlusion.

Respondent widow filed with the supervisor her claim for pension, stating that the death of her husband was caused by strain on his heart and the intense heat while he was at his usual work. In response to a letter from the department, the employer filed its report stating that neither it nor its chief engineer had any knowledge of any accident on that occasion. The supervisor, on July 25, 1934, rejected the claim on the ground that death was not the result of the alleged injury. Respondent then appealed to the joint board and on August 20th was granted a rehearing.

On November 4, 1934, with the consent of respondent, the body of the deceased was exhumed, and an autopsy was performed, each of the parties herein being represented by a physician. The autopsy report gave a minute description of the organs examined and

concluded with a pathological diagnosis of (1) recent coronary thrombus of right coronary artery, (2) arterio-sclerosis of coronary artery with atheromatous ulcer, and (3) beginning necrosis of heart muscle with cellular infiltration and adherent thrombus.

During the period between February 21 and August 7, 1935, an examiner for the joint board took the testimony of respondent's witnesses, consisting of herself, a fellow workman of the deceased, the attending physician, and three other physicians, one of whom had been present at the autopsy. The testimony of respondent and the fellow workman is comprehended in the portion of our statement already given above. The attending physician testified that the symptoms plainly indicated that Mr. Devlin's death was caused by coronary occlusion, but he declined to express any opinion as to what was the inciting cause of the occlusion. He further stated, on redirect examination, in response to a leading question, that the occlusion *probably* started on May 8th. The substance of the testimony of two of the other physicians was that Mr. Devlin's heart showed evidence of disease of long standing, but that, in their opinion, the strain and over-exertion to which he was subjected on May 8th induced and precipitated the coronary occlusion causing his death on May 17th; that "that was the match that touched it off." The fifth physician testified that in November, 1933, he had attended Mr. Devlin for acute bronchitis, and that he had on that occasion examined his chest, but had found nothing wrong with his heart. The appellant department offered no independent testimony before the joint board.

After respondent's testimony had thus been taken by the examiner, the joint board submitted the entire departmental file to a commission of four physicians, one of whom had performed the autopsy. The com-

mission, after a study of the matter, made its report; giving as its opinion that the thrombus originated probably within twenty-four hours before death, and that the coronary occlusion was not the result of any work in which the deceased had been engaged. It is to be noted that the report of the commission was wholly *ex parte* and was never subject to cross-examination by respondent.

After a review and consideration of the entire record, including all preliminary reports, the testimony taken on behalf of respondent and the report of the commission, the joint board in regular session on November 18, 1935, made its findings from which it concluded that the testimony in respondent's behalf failed to prove an injury within the industrial insurance act, and ordered that the supervisor's action in rejecting the claim be sustained.

On November 25th, respondent gave notice of appeal to the superior court and thereafter made demand for a jury trial, which was granted. Appellant subsequently moved to quash the demand, but the motion was denied. In due time, the case came on for trial before a jury, resulting in a disagreement. Later, the case was again brought on for trial, at which time appellant again moved to quash the demand for a jury and objected to trying the case as a jury case. The court denied the motion and overruled the objection. The trial then proceeded.

Respondent presented her case to the jury by reading the testimony taken on her behalf before the joint board and offering certain portions of the departmental file as exhibits, which were admitted. The court refused to admit the remainder of the file, as requested by appellant.

At the conclusion of respondent's evidence, appellant, for the first time, called a number of its own

witnesses, among whom were three of the physicians who had composed the commission that had previously made a report to the joint board. Respondent then called a rebuttal witness who was also a physician. The testimony of each physician tended to support the contentions of the particular party by whom he had been called.

The court instructed the jury at length, and thereafter a general verdict "for the plaintiff" was returned. Motion for judgment notwithstanding the verdict and motion for a new trial having each been denied, the court entered judgment remanding the cause to the department with instruction to pay respondent such compensation as she was entitled to receive under the statute; the judgment also allowed respondent's attorneys a fee in a substantial amount. This appeal is from that judgment.

Appellant makes twenty-three assignments of error, which, for the sake of convenience and brevity, we shall consider in groups.

Under four of the assignments, appellant makes the contention that the court erred in calling a jury and submitting the case to it. The calling of a jury in cases arising under the industrial insurance act is discretionary with the court, except in certain instances not material here. Rem. Rev. Stat., § 7697 [P. C. § 3488].

We have just recently held that neither party to the action in such cases is entitled to demand a jury as a matter of right, and that mere accedence by the court to such demand is not of itself a proper exercise of judicial discretion; that, in considering a demand for a jury, the court should familiarize itself with the issues involved in the case in order to determine whether a trial by jury is appropriate; and that, in all such cases, the verdict of the jury is not conclusive

upon the court, but only advisory. *Hodgen v. Department of Labor & Industries, ante* p. 541, 78 P. (2d) 949.

But the record before us does not show that the court failed to familiarize itself with the issues involved before actually calling the jury; on the contrary, it appears beyond question that the court was definitely apprised of the issues before the trial proper began. The issue of fact involved was whether the coronary thrombosis or occlusion was induced or precipitated by strain or over-exertion on the part of respondent's husband on the night of May 8, 1934, or whether it came about, without the intervention of trauma, in the natural and ordinary course of events as the ultimate result of heart disease. With that issue of fact presented, it was discretionary with the court whether it would allow a jury to be called.

The appellant further contends, under this series of assignments, that the sole question in the case was whether the facts shown by respondent's evidence established an injury as defined by Rem. Rev. Stat., § 7675 [P. C. § 3470]. If that were the sole question, the decisions of this court furnish an answer adverse to appellant's contention, as will appear later in our discussion of certain instructions given by the court. These four assignments of error are, therefore, not well founded.

Upon the next assignment, appellant contends that the court erred in not taking up for consideration, as a matter of law, and before submitting anything to the jury, the question whether or not respondent had made a *prima facie* case. In considering this and the next series of assignments, it is to be remembered that the department introduced no testimony before the joint board.

In our opinion, the testimony on behalf of respondent, taken alone, clearly made a *prima facie* case, and

the court could not possibly have found otherwise at that stage of the proceeding. Moreover, the court had called a jury for the determination of what was then known to be an issuable fact in the case. The determination of that fact might well have a considerable bearing upon the ultimate question to be finally decided by the court, namely, whether the department had correctly construed the law and found the facts. Although the verdict of the jury would be advisory only, nevertheless the court was entitled to the benefit of the jury's advice before making its final disposition of the case. The assignment is not well taken.

By a series of three assignments, appellant contends that the court erred in not granting appellant's motion for dismissal at the end of respondent's case, for dismissal at the end of appellant's testimony, and for dismissal at the conclusion of all the testimony, respectively. All of these assignments challenge the sufficiency of the evidence to sustain the verdict.

Bearing in mind that the only evidence under consideration, in each of the above instances, was that which had been produced before the jury, and also bearing in mind the advisory purpose of the verdict, we note that the question raised by the first of these motions was whether the respondent had made a *prima facie* case on the issue of fact, and that the question raised by the other motions was whether, under all the admitted evidence, the jury could properly return a verdict for the respondent. Our reading of the testimony convinces us that there was evidence or reasonable inference from evidence sufficient to make a *prima facie* case for respondent and also sufficient to sustain a verdict upon the limited question of fact determined by the jury. *Stevich v. Department of Labor & Industries,* 182 Wash. 401, 403, 47 P. (2d) 32.

In the next assignment, appellant challenges

the correctness of the court's ruling in admitting in evidence a chart of the human heart. The exhibit was not part of the departmental file. Appellant's contention is based upon that provision of Rem. Rev. Stat., § 7697, which precludes one who appeals from the decision of the department to the superior court from offering any evidence or testimony other than that offered before the joint board or included in the record offered by the department.

Conceding the force and effect of the statute, it is clear from the record that appellant was in no way prejudiced by the admission of the particular exhibit. The chart was offered merely for illustrative purposes. Many witnesses referred to it in that way, and the court carefully instructed the jury as to its limited purpose.

 Two other assignments are based upon the admission in evidence of the report of the department's investigator concerning Devlin's injury and death and upon the admission of the autopsy report. These reports were parts of the departmental file and were considered by the joint board when it rejected respondent's claim. They therefore constituted a part of the record before the superior court; and, although the sources of information on which they were based and the manner in which they became part of the departmental file might affect their weight as evidence, they were nevertheless competent and admissible, to be considered for what they were worth. *McKinnie v. Department of Labor & Industries,* 179 Wash. 245, 248, 37 P. (2d) 218. See, also, *Wintermute v. Department of Labor & Industries,* 183 Wash. 169, 174, 48 P. (2d) 627.

 Appellant next assigns error on the part of the court in permitting respondent and a fellow worker of the deceased to testify as to certain state-

ments made by the latter respecting the manner in which he had been injured. It is contended that such testimony was hearsay and also that it offended Rem. Rev. Stat., § 1211 [P. C. § 7722], which provides that, in an action or proceeding wherein the adverse party sues or defends as the legal representative of a deceased person, a party in interest shall not be permitted to testify in his own behalf as to any statement made to him or in his presence by the deceased.

The nature of the statements made by the deceased workman to the witnesses and the time at which they were made reasonably support the conclusion that they were spontaneously uttered with reference to the transaction itself and were not the result of premeditation or design. They were, therefore, competent as part of the *res gestae*. *Walters v. Spokane International R. Co.*, 58 Wash. 293, 297, 108 Pac. 593, 42 L. R. A. (N. S.) 917; *State v. Goodwin*, 119 Wash. 135, 204 Pac. 769; *Lucchesi v. Reynolds*, 125 Wash. 352, 354, 216 Pac. 12; *Hines v. Foster*, 166 Wash. 165, 169, 6 P. (2d) 597.

The evidence was not precluded by Rem. Rev. Stat., § 1211, because respondent is not suing or defending as the legal representative of her deceased husband, but is waging a proceeding upon a right of action that belongs directly to her under the workmen's compensation act. Moreover, were she suing as the representative of the deceased, her evidence was not adverse, but favorable, to the estate. *Brucker v. De Hart*, 106 Wash. 386, 391, 180 Pac. 397; *McFarland v. Department of Labor & Industries*, 188 Wash. 357, 362, 62 P. (2d) 714.

The next assignment goes to the court's refusal to strike the testimony of a particular witness because it contradicted the testimony of other witnesses for respondent. Assuming that it was contradictory, that

furnished no ground for striking it. The assignment is without merit.

The next error assigned is that the court excluded the witnesses from the court room during the course of the trial. The placing of witnesses under the rule of exclusion is discretionary with the court, and in the absence of abuse of discretion the ruling of the court is conclusive. *Wiles v. Northern Pac. R. Co.*, 66 Wash. 337, 119 Pac. 810. No abuse of discretion is shown in this instance, and nothing by way of prejudice to appellant appears.

The next assignment is based upon the failure of the court to limit the cross-examination of one of appellant's witnesses. This assignment is not discussed in the brief. It will therefore not be considered. *Union State Bank of Wapato v. Warner*, 140 Wash. 220, 226, 248 Pac. 394.

The next assignment covers a number of instructions given by the court.

Instruction No. 1 contained the following statement:

"If you find from a fair preponderance of the evidence that Felix Devlin had a disease of the heart of long standing and that strain or overexertion, acting on his heart, induced or precipitated the coronary occlusion or thrombosis, thereby causing his death, your verdict will be for the plaintiff. On the other hand, if you find that the coronary thrombosis or occlusion was merely the natural and ultimate result of heart disease, uninfluenced by the alleged strain or exertion, your verdict will be for the defendant."

Appellant excepted to this portion of the instruction on the ground that strain and exertion are not within the statutory definition of injury unless they are extraordinary or unusual. Instructions Nos. 3 and 8 were excepted to on the same ground.

The words "strain" and "overexertion," as used in the instructions, mean, or certainly imply, tension and excessive physical effort. The context of the instruction as above quoted clearly indicates that those words were used in that sense. The instructions come within the rule that an accident exists when a man undertaking work is unable to withstand the exertion required to do it, whatever may be the degree of exertion used or the condition of the workman's health. *Frandila v. Department of Labor & Industries*, 137 Wash. 530, 243 Pac. 5; *Metcalf v. Department of Labor & Industries*, 168 Wash. 305, 11 P. (2d) 821; *McKinnie v. Department of Labor & Industries*, 179 Wash. 245, 37 P. (2d) 218; *Smith v. Department of Labor & Industries*, 179 Wash. 501, 38 P. (2d) 212; *Daugherty v. Department of Labor & Industries*, 188 Wash. 626, 63 P. (2d) 434.

Appellant excepted to instruction No. 5 because it stated that the accident and medical aid funds were created by contributions from employers and employees, when, as a matter of fact, only the medical aid fund is so created. Technically, the instruction is incorrect to the extent just indicated, but we can hardly conceive that appellant was prejudiced thereby, for in the same instruction the court incorporated a request of appellant to the effect that it was the duty of the department to collect, preserve, and pay out, upon proper claim, the workmen's compensation fund, and that the department had no interest in the outcome of the action except to see that the fund was properly administered.

Appellant excepted to instruction No. 6 because it failed to tell the jury that the burden of proof rested upon respondent throughout the trial to produce evidence that preponderated over the decision of the

department. In the first sentence of that instruction, the jury was told:

"You are instructed that the decision of the Department of Labor and Industries is prima facie correct, and that the burden of proof is upon the plaintiff [respondent] to establish by a fair preponderance of the evidence that its decision is erroneous."

In other instructions the jury was told that the burden was on respondent to prove that her deceased husband was injured in the course of his employment, and that such injury was the cause of his death. The jury had but one issue of fact to determine, and we are convinced that it was in no way misled by the instruction as given.

Exception was taken to instruction No. 9, which was an exact quotation of the language used in *Smith v. Department of Labor & Industries,* 179 Wash. 501, 38 P. (2d) 212, defining the rule applicable in such instances. Nothing more need be said in that regard.

In four other assignments, appellant contends that the court erred in accepting and following the verdict of the jury, in failing to set the verdict aside, in entering judgment upon the verdict, and in overruling the motion for judgment notwithstanding the verdict.

The argument upon these assignments is largely a repetition of that advanced in support of the preceding assignments. Only one contention is made, either in these assignments or elsewhere in appellant's brief, additional to what has already been discussed. Appellant urges that, inasmuch as all the facts were before the court, it became the duty of the court to determine, as a matter of law, whether the respondent had made a case under the provisions of the workmen's compensation act; and that, under the facts as shown by the entire record, the motion for judgment notwithstanding the verdict should have been granted.

It is true, as we expressly held in *Hodgen v. Department of Labor & Industries, ante* p. 541, 78 P. (2d) 949, that, after the jury has returned its verdict, it becomes the function and duty of the court itself to determine from the entire record, including the departmental record, the evidence taken in open court and the verdict of the jury, whether or not the department has acted within its power and has correctly construed the law and found the facts, as required by Rem. Rev. Stat., § 7697. But we believe that the requirements of the statute have been fully met in this case.

Everything of material value in the departmental record was brought to the attention of the court, and the only portions thereof which were offered at the trial by appellant and not admitted by the court were the employer's report, the report of the commission of specialists, and the summary and findings of fact made by the joint board.

The employer's report was wholly negative, stating merely that the employer had no knowledge of any accident. The substance of the report of the commission was covered at the trial by three of the four specialists composing the commission. The findings of the joint board were simply a resume of the verbal testimony which was taken before that body and subsequently read in its entirety to the jury. The remainder of the departmental file consisted of routine correspondence that had no probative value whatever.

Appellant's motion for judgment notwithstanding the verdict assigned as one of its grounds that the evidence was insufficient to warrant the court in saying that the department had not correctly construed the law and found the facts. The attention of the court was thus directly challenged to a consideration of the departmental record, of which it then had complete knowledge; and the record before us sufficiently indi-

cates that the court had the entire record in mind when it overruled the motion and entered judgment in the case. Our consideration of the record on appeal convinces us that the judgment was properly entered and that no error was committed on this phase of the case.

The final assignment of error is addressed to the amount of attorney's fees allowed by the court. Under all the circumstances shown by the record, we think that the amount was not excessive.

We find no reversible error in the case. The judgment is therefore affirmed.

MAIN, MILLARD, BEALS, BLAKE, GERAGHTY, ROBINSON, and SIMPSON, JJ., concur.

HOLCOMB, J., concurs in the result.

