[No. 28077.   Department One.   November 13, 1941.]

MARGARET COOPER, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

*The Attorney General* and *June Fowles, Assistant,* for appellant.

*Phil K. Eaton* and *E. S. Avey,* for respondent.

[1]Reported in 118 P. (2d) 942.

ROBINSON, C. J.—Simon Cooper was a night watchman and gatekeeper at the plant of the McCleary Timber Company, at McCleary, Washington. His hours of work were from seven p. m. until one a. m. It was his duty to watch the plant of his employer, making hourly rounds of inspection and punching a clock at designated stations, in accordance with requirements of the fire insurance company. On May 9, 1935, he went to work at the usual hour. His body was found at about 4:30 the next morning by Amos Nigh, the night watchman then on duty, by the roadside, about forty feet across the street from the gatehouse. His jacket and lunch box were on the table in the gatehouse.

Prior to May 9, he appeared to be in good health. His wife testified that, before going to work, he was in good spirits and had eaten a hearty supper. Although seventy-two years of age, he had never been ill, except on one occasion when he was laid up for three days with the flu, and Mrs. Cooper testified that, to the best of her recollection, he had never consulted a physician. He had been employed by the timber company for thirty-eight years, and until three years prior to his death had done heavy work, mostly in the woods, falling and bucking.

The county coroner signed a death certificate stating that the cause of death was angina pectoris. However, there was no autopsy, and the information from which the report was prepared was gained from the undertaker. The employer made no report of the death to the department of labor and industries.

His widow, almost a year after his death, filed a claim for a widow's pension. The supervisor investigated, and rejected the claim. An appeal was taken to the joint board, which entered an order affirming the action of the supervisor. An appeal was taken to

the superior court. The matter was heard by a jury, and a verdict returned for the department. The court set aside the verdict and entered judgment for the claimant. The department appeals.

The evidence shows that, on the night of May 9, 1935, at about eleven or eleven-thirty o'clock a fire occurred in the town of McCleary. Three houses, two of them owned by the timber company, were burned. Some of the witnesses testified that the fire was one thousand feet from the mill. Another witness, a fire insurance agent who had placed insurance on one of the buildings, testified that the building was three hundred feet from the sawmill, if the sawmill included the planer sheds.

The evidence further shows that McCleary is a small town of approximately fifteen hundred population. There is no fire department. The only fire apparatus is that owned by the timber company. Most of the male population are employed by the timber company. The timber company maintained a hose cart and one and one-half inch hose outside the plant near the gate-house, which the townspeople were at liberty to use in case of fire. It also maintained fire equipment and two and one-half inch hose inside the factory.

██ Cooper, the night watchman, was apparently the first man at the plant to notice the fire. He went to the engine room and asked the fireman to blow the fire whistle. The fireman refused to do so, stating that he had no orders to blow any fire whistle. The fireman testified that Cooper appeared to be very nervous at that time. He further testified that he saw Cooper later that evening and that he was very nervous and staggery, and he made the statement that he was "all played out" and that he had been "fighting with the hose." This type of evidence, although somewhat unsatisfactory from a technical point of view, is given

consideration in reviewing the records of industrial insurance cases. See, for example, *Devlin v. Dept. of Labor & Industries,* 194 Wash. 549, 78 P. (2d) 952. Its probative value depends, to some extent, upon the character of the deceased who is said to have made the statement or statements attributed to him; hence, we think it proper to note that Mr. Henry McCleary, president of the employer, although called by the claimant as an adverse witness, testified as follows:

"I want to say for Simon Cooper, after knowing him for 38 years and working for us for that length of time, that if you told Simon Cooper to punch that clock on the dot he would punch it right exactly so. He was just that kind of a man. . . . There was no more faithful, honest, clean-cut man in the country than Simon Cooper."

No witness testified that he saw Cooper handling any hose or fighting the fire. Officers of the company testified that it was no part of the duties of the night watchman to handle hose or do anything outside the plant. The president testified that he told Cooper to let the men get the two and one-half inch hose on the inside of the factory, and that the men ran past him, but that Cooper did not handle any hose. It appears, however, that Amos Nigh, the watchman who regularly relieved Cooper at one o'clock, did handle hose and did assist in fighting the fire. Nigh, at the time of the hearings, was deceased, and we do not have his testimony. Prior to his death, he had made an affidavit which was offered in evidence by the department, but not admitted. The department seems to treat this statement as evidence in the case and copies it in full in its brief. As it was, apparently, not considered by the jury, it is not considered by us.

Our decisions regarding industrial insurance claims, growing out of instantaneous deaths from heart failure or other internal causes, have been so recently and so

exhaustively reviewed in the opinion in *McCormick Lumber Co. v. Dept. of Labor & Industries,* 7 Wn. (2d) 40, 108 P. (2d) 807, handed down in January of this year, that any further attempt to trace the development of our case law to the point reached in that opinion would be superfluous. The case was heard *En Banc,* and seven of the nine judges concurred in the opinion, two dissenting. The opinion has not been modified, and, therefore, states the existing law. But, in the instant case, we are concerned primarily with the facts.

If, in the present case, the judgment appealed from allowing the claim had been rendered by a court sitting without a jury, or, notwithstanding the verdict of a. jury sitting in an advisory capacity, it could, and presumably would, be affirmed; for as strong a showing is presented on behalf of the claimant as was presented in some of the cases in which we have upheld similar claims on appeal. But, unfortunately for the claimant, the jury verdict was rendered in April, 1940, a full ten months after § 1 of chapter 184, Laws of 1939, p. 579, became effective. This enactment materially limited the power of the superior courts and of this court in industrial insurance cases. We quote a portion of § 1 of the act:

"In all appeals to the superior court from any order, decision or award of the joint board of the Department of Labor and Industries, either party shall be entitled to a trial by jury upon demand. *The jury's verdict in every such appeal shall have the same force and effect as in actions at law.*" Rem. Rev. Stat. (Sup.), § 7697-2 [P. C. § 3488-21].

In construing this statute for the first time in *Alfredson v. Dept. of Labor & Industries,* 5 Wn. (2d) 648, 105 P. (2d) 37, we held that it made jury verdicts in such appeals controlling as to disputed issues of fact, and we have reaffirmed that holding in six or seven

subsequent decisions, the majority of which are cited in the last opinion of the series, *Calkins v. Dept. of Labor & Industries,* 10 Wn. (2d) 565, 117 P. (2d) 640.

█ Outside of the facts that the deceased died between one and four-thirty o'clock a. m. on the morning of May 10, 1935, at some time after working his shift at his employer's mill, and his .body was found in the roadway near the mill, there was scarcely any material allegation of fact that was not in dispute. Was angina pectoris the cause of the death? The evidence of that was merely conjectural, amounting to an undertaker's guess which was accepted by the coroner and carried over into the death certificate. Did the defendant actually handle any fire hose? There is direct evidence that it was no part of his duty to do so, and further, that he did not do so. The evidence that he did is confined to his reputed *ante mortem* statements. If he did handle the fire hose, and if he died from angina pectoris, was his death caused by the exertion of handling the hose or merely by the excitement of seeing a threatening fire in the town of McCleary? The claimant's medical witness, who never saw Mr. Cooper or even his body, would not go further than to say that, according to the history given him, in a hypothetical question, the deceased probably died of angina pectoris. His testimony as to the inducing cause was equally inconclusive. At the close of his examination, the matter of proximate cause was left in the following uncertain condition:

"Q. So, then, Doctor, it is a matter of speculation or conjecture as to whether the death was due solely to the excitement, due solely to the alleged physical exertion, or due to a combination of both causes? A. That's right. I think that's right. MR. FRANKLIN: That is all.

"REDIRECT EXAMINATION by Mr. Eaton. Q. But the combination in the first place, the probable condition

of his heart together with excitement plus the fighting of the hose would, apparently, considering the circumstances under the hypothetical question I asked you, result as it did in the fatality? A. *It could.* MR. EATON: That is all. MR. FRANKLIN: That is all. MR. EATON: That completes our case." (Italics ours.)

As the evidence stood in this case, it would have sustained a jury verdict for either party. The jury returned a verdict for the department. The trial court did not give the verdict the force and effect prescribed by chapter 184, Laws of 1939, p. 579, but set it aside and entered judgment for the claimant.

The judgment is reversed, and the cause dismissed.

MAIN, STEINERT, BLAKE, and DRIVER, JJ., concur.