[No. 28739. Department Two. July 27, 1942.]

Mary Ray Gilham, *Respondent,* v. The Department of Labor and Industries, *Appellant.*[1]

[1]Reported in 128 P. (2d) 645.

The Attorney General, Edward S. Franklin, and John E. Close, Assistants, for appellant.

Lee J. Campbell and J. O. Davies, for respondent.

BLAKE, J.—This is an appeal from a judgment, entered on the verdict of a jury, reversing a decision of the joint board of the department of labor and industries, and directing the department to allow plaintiff compensation on account of the death of her husband, Hugh Gilham. The department appeals.

Two questions are raised by the assignments of error: (1) whether the evidence was sufficient to sustain the verdict; and (2) whether the trial court abused its discretion in refusing to grant a new trial.

First. In considering the sufficiency of the evidence, we must accept it in the light most favorable to respondent, and without according any presumption of correctness to the decision of the joint board. Alfredson v. Department of Labor & Industries, 5 Wn. (2d) 648, 105 P. (2) 37.

Viewed in that light, we think there can be no doubt that respondent made a case for the jury. Indeed, as we view the record, appellant's challenge is directed rather to the credibility of the testimony than to the sufficiency of the evidence.

For several years prior to his death, Hugh Gilham had been employed as a fireman at the mill of the

Carlisle Lumber Company. In the boiler room was a runway suspended six or seven feet above the concrete floor. At some time he had fallen from the runway. When, is in dispute. He died December 29, 1939, of meningitis. Early in the preceding November, he had sustained a skull fracture in an auto accident. His physician discharged him on December 14th as "fit to work." He returned to work on December 15th. Respondent testified:

"Q. Now, did he have any accident or did he receive any injury there at the Carlisle Lumber Company a short time prior to his death? A. Yes, he fell there. Q. And what injury did he receive? A. He had a bruise on his head and he skinned his legs up a little bit. Black and blue, bluish marks. . . . Q. Now, what was the condition of his health at the time he went to work? A. He was feeling fine when he went to work. Q. And how long did he work before he had this fall that you speak about? A. He had worked around—he must have put in just about 5 days. I think it was about on the 5th day that he fell. Q. Now, what effect, if you know, did this fall have upon him? A. Well, it caused his head to ache. Q. How long after the fall was it— A. He complained of it the same day. He fell at night and he complained of it that day. Q. What shift was he working on? A. He was working from ten at night until six in the morning."

The next two days were his regular layoff. After working the 22nd and 23rd, he became so sick that he had to quit. He lapsed into a coma on the 26th, and died on the 29th. The doctor who attended him testified that, by reason of the head injuries Gilham sustained in the auto accident, he was more susceptible to meningitis; and that the fall described by respondent could have been the inciting cause.

This testimony was all competent and sufficient to take the case to the jury. *Devlin v. Department of Labor & Industries,* 194 Wash. 549, 78 P. (2d) 952;

*Cooper v. Department of Labor & Industries,* 11 Wn. (2d) 248, 118 P. (2d) 942. A witness for appellant, indeed, testified that Gilham's fall from the runway occurred prior to his auto accident. This testimony, however, presented merely a conflict in the evidence to be resolved by the jury.

Appellant also urges that the verdict rests in speculation, since the attending physician also testified that Gilham's meningitis might have resulted from a cold. There is nothing more than insinuation in the record that he had a cold. The idea was injected in the record upon cross-examination of respondent concerning statements made by her to an investigator of the department. The incident amounted to nothing more than an attempt to impeach her. It did not establish the fact that Gilham had a cold. It was insufficient to inject any element of speculation into the verdict. See *Nelson v. Industrial Ins. Department,* 104 Wash. 204, 176 Pac. 15.

■ *Second.* Appellant contends that the court abused its discretion in not granting the motion for a new trial on the ground that the verdict was against the weight of the evidence. This contention is based on certain remarks made by the trial court in ruling on a motion for nonsuit. By these remarks, the court indicated that it thought Gilham's death was the result of the auto accident rather than from a subsequent injury. When it came to passing on the motion for new trial, however, there is nothing in the record to indicate that the court did not exercise a sound discretion.

We do not think that comments of the court, made during the progress of the trial, concerning the weight of the evidence should be held conclusive upon it in exercising its discretion when passing on a motion for new trial. In any event, since we think there was

ample evidence to sustain the verdict, we are hardly in a position to say the trial court abused its discretion in this instance.

Judgment affirmed.

ROBINSON, C. J., BEALS, MILLARD, and JEFFERS, JJ., concur.

